# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2015-SC-000357-MR

JOEL DAVID SEARCY        APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.        HONORABLE THOMAS L CLARK, JUDGE
NO. 13-CR-1096

COMMONWEALTH OF KENTUCKY        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A circuit court jury convicted Joel David Searcy of second-degree manslaughter, first-degree robbery, and multiple counts of unlawful imprisonment, for all of which he was sentenced to twenty-five years' imprisonment.

In this matter-of-right appeal from the resulting judgment[1], Searcy does not challenge the validity of the manslaughter and unlawful imprisonment convictions. He challenges only his first-degree robbery conviction. He argues that the trial court erred by failing to direct a verdict on the robbery charge or, alternatively, that the trial court erred by failing to instruct the jury on criminal attempt to commit robbery as a lesser-included offense.

---

[1] Ky. Const. § 110(2)(b).

We hold that the trial court did not err in declining to grant a directed verdict on the robbery charge or in failing to instruct the jury on attempted robbery. So we affirm the judgment below.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Searcy contends that a paranoid-delusional episode brought on by his active methamphetamine addiction explains his conduct on the day in question. On that day, Searcy drove his childhood friend, Mahailey Harrod, and her children to a doctor's appointment. On the way back home, they drove past the mobile-home park where Searcy worked, and he became paranoid after seeing people there. He believed people were out to get him, and his goal then became to not stop the car. When forced to stop at an intersection, Searcy snapped. He believed a man on a moped behind him reached for a gun to shoot him. He accelerated and rammed a truck in front of him. The terrified Harrod demanded that he stop the car so that she and her children could exit. When he stopped, he took off running into the road, waving his arms and calling for help. An elderly man, later identified as Donald Cooke, stopped his car and Searcy got in.

The two took off down the road, with Cooke driving and Searcy crouching in the passenger seat to avoid detection. After Cooke turned onto the same street where Searcy's former heroin dealer lived, Searcy became increasingly paranoid. He grabbed the steering wheel, and a struggle ensued. Cooke's car ended up in a nearby parking lot, with Searcy and Cooke fighting for control of the car. Searcy threw Cooke from the driver's side door, tossed Cooke's oxygen

tank tossed on top of him, and launched his small dog through the car window. Some eyewitnesses approached the scene, and Searcy jumped out of the car and ran down the street. He was apprehended moments later.

Cooke was 82 years old at the time of the scuffle. On arrival at the hospital, his admitting physician found Cooke had a punctured lung, numerous bruises, and was in respiratory failure. He was sedated and placed on a ventilator, but he never regained consciousness. Cooke died a little over a week after he was admitted to the hospital. An autopsy revealed that the cause of death was subdural hematoma and multisystem organ failure as a result of blunt impacts to the trunk and extremities, rib fractures, and pneumothorax.

Searcy was indicted on one count of capital murder, one count of robbery and four counts of first-degree unlawful imprisonment. He was later convicted on one count of second-degree manslaughter, one count of first-degree robbery, and five counts of second-degree unlawful imprisonment. He was sentenced to a total term of twenty-five years' imprisonment.

## II. ANALYSIS.

### A. Searcy was not Entitled to a Directed Verdict.

Searcy contends that the trial court should have granted a directed verdict in his favor for the first-degree robbery charge. He claims that his actions were out of a legitimate fear for his life—no matter the fact that they were simply methamphetamine-induced paranoia—and that he did not wield the criminal intent permanently to deprive Cooke of his automobile. Searcy

3

points to his escape on foot shortly after Cooke was ejected from the vehicle as proof that he did not intend to commit a theft at all.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[2] On denial of a directed verdict, our analysis is whether, under the evidence as a whole, it would be clearly unreasonable for the jury to find Searcy guilty.[3] We construe all evidence below in a light most favorable to the Commonwealth.[4] Under this standard of review, we are certain Searcy was not entitled to a directed verdict.

The Kentucky Penal Code contemplates a variety of forms of criminal activity that may qualify as first-degree robbery. The statute defines that crimes as follows:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>    a. Causes physical injury to any person who is not a participant in the crime;
>    b. Is armed with a deadly weapon; or
>    c. Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant of the crime.[5]

---

[2] *In re Winship*, 397 U.S. 358, 364 (1970).

[3] *See Commonwealth v. Fletcher*, 59 S.W.3d 920, 921 (Ky. 2001). *See also Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[4] *See Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009).

[5] KRS 515.020.

The first-degree robbery statute thus contains several elements, each of which must be met before a defendant may be convicted of the crime. But of those elements, Searcy only questions his subjective intent to commit a theft of Cooke's property. He alleges that he did not intend necessarily to steal the vehicle, evidenced by his decision to flee the scene on foot shortly after Cooke was ejected from the car. He additionally hypothesizes that he could not have the requisite intent to steal based on his drug-induced paranoia and the resulting fear he had for his own life at the time of the incident.

Searcy offers no evidence in support of his claim that he did not intend to take Cooke's vehicle. Quite the opposite, there is ample evidence in the record to support the inference that he in fact did intend to commit a theft. The Commonwealth appropriately points to Searcy's statements to a law-enforcement officer that he was going to get in the driver's seat and drive Cooke's vehicle after he was pushed out of the car. A witness testified that Cooke said Searcy was trying to take his car. Searcy had Cooke's keys in his possession when he was apprehended. We think there is ample evidence for a reasonable jury to conclude Searcy was guilty of first-degree robbery.

We are unprepared today to allow a defendant's drug-fueled paranoia to insulate him from the realities of his actions. It is beyond dispute Searcy and Cooke were engaged in a struggle for control of Cooke's vehicle. Searcy used physical force to gain control of the car. It matters not *why* he felt he needed to control the car—whether he delusionally feared for his life or if he simply wished to have Cooke's car for his own. What does matter is that he

5

intentionally engaged in a course of physical actions that culminated in him forcefully expelling Cooke from the vehicle (and ultimately killing him), so Searcy could presumably take the car for his own use—whatever his subjective goals may have been. We have no trouble agreeing that any reasonable jury could convict Searcy under these circumstances. So we accordingly conclude that he was not entitled to a directed-verdict for this offense.

## B. Searcy Was Not Entitled to an Attempted Robbery Instruction.

Searcy next argues that the trial court erroneously refused to instruct the jury on attempted robbery as a lesser-included offense of first-degree robbery. At trial, Searcy's counsel tendered an instruction for first-degree criminal attempt to commit a robbery. The trial court rejected this instruction and included criminal-attempt language in its instruction for first-degree robbery. Searcy contends there was ample evidence for a jury to find he was guilty only of attempting to steal Cooke's vehicle by concluding that he failed to actually steal the car. We disagree.

Under Kentucky Rules of Criminal Procedure (RCr) 9.54, a trial court must instruct the jury on the whole law of the case. Likewise, in *Manning v. Commonwealth*, we held that the trial court must instruct on every theory of the case reasonably deducible from the evidence.[6] And most recently, we held that "Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it."[7] On appellate review of a trial court's

---

[6] *See* 23 S.W.3d 610, 614 (Ky. 2000).

[7] *Sargent v. Schaffer*, 467 S.W.3d 198, 203 (Ky. 2015).

refusal to give an instruction we "must ask ourselves, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes."[8] The trial court's decision is reviewed for an abuse of discretion, reversing only upon a finding that the court's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[9]

The Kentucky Penal Code contemplates the possibility of criminal attempts to perform acts designated criminal within the code. In Kentucky, one is guilty of an attempted crime when, consistent with the kind of intent otherwise required for the commission of the crime, he "intentionally does or omits to do anything which, under the circumstances and he believes them to be, is a substantial step in the course of conduct planned to culminate in his commission of the crime."[10]

The Commonwealth's primary justification for the trial court's ruling on this issue is that it used a model instruction for first-degree robbery from Cooper's treatise on model juror instructions, and that model instruction includes criminal-attempt language to instruct on this crime itself. The instruction given to the jury in the instant case, is stated as follows:

First-Degree Robbery

---

[8] *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013).

[9] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[10] KRS 506.010(1)(b).

You will find the Defendant guilty of First-Degree Robbery under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about August 1, 2013, and before the finding of the Indictment herein, he stole *or attempted to steal* a car from Donald Cooke; AND

B. That in the course of doing so and with intent to accomplish the theft, he caused a physical injury to Donald Cooke by using physical force.

It is therefore the Commonwealth's position that Searcy's theory of attempted robbery was incorporated in the larger first-degree robbery instruction and supported the possibility that the jury may conclude that he only attempted to steal Cooke's vehicle to support a conviction for first-degree robbery. And sure enough, under Kentucky law one may in fact be guilty of first-degree robbery without succeeding in forceful theft—the criminal intent to permanently deprive another of their property is sufficient.[11]

As we discussed above, we are comfortable with the notion that a reasonable jury could determine beyond a reasonable doubt that Searcy was guilty of first-degree robbery despite the fact that he did not physically drive away with Cooke's vehicle. Likewise, we are confident that the trial court did not abuse its discretion in refusing him an instruction for attempted robbery. Searcy used physical force against Cooke to seize control of the vehicle—he intended to deprive Cooke of the use of his automobile and in fact

---

[11] *See Travis v. Commonwealth*, 327 S.W.3d 456 (Ky. 2010) ("A defendant who uses physical force with the requisite intent is guilty of robbery regardless of whether any of the property intended to be taken is in fact taken.") (referring to *Kirkland v. Commonwealth*, 53 S.W.3d 71, 76 (Ky. 2001)).

accomplished that goal, finding himself in possession of the keys to the vehicle at the end of the altercation. Because there is ample evidence to conclude that Searcy actually completed the crime, the trial court acted reasonably in deducing that criminal attempt is unavailable under these circumstances. Because we conclude that Searcy was not entitled to a criminal-attempt instruction, we hold that the trial court did not abuse its discretion by refusing to instruct the jury on that lesser offense.

## III. CONCLUSION.

For the foregoing reasons, we affirm the trial court's judgment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General

9